# EXHIBIT A

Case: 1:22-cv-00893 Document #: 3-1 Filed: 02/18/22 Page 2 of 13 PageID #:10

Hearing Date: 5/11/2022 9:30 AM
Location: Court Room 2402
Judge: Price Walker, Allen

FILED
1/11/2022 10:20 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH00227
Calendar, 3
16241017

Atty. No. 41106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

KEITH WOODWARD, )
on behalf of Plaintiff and a class, )
)
Plaintiff, )
)
vs. ) 2022CH00227
)
CONVERGENT OUTSOURCING, INC., )
)
Defendant. )

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff Keith Woodward brings this action to secure redress regarding unlawful collection practices engaged in by Defendant Convergent Outsourcing, Inc. Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA").

### JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d).

3. Personal jurisdiction in Illinois is proper because Defendant sent its collection letters into Illinois.

4. Venue in this county is proper because Defendant's collection letter was received here.

### PARTIES

#### Plaintiff

5. Plaintiff Keith Woodward is a natural person residing in Cook County, Illinois.

#### Defendant

6. Defendant Convergent Outsourcing, Inc. is a corporation organized under Washington state law with its principal offices at 800 SW 39th Street, Renton, WA 98057. It does business in Illinois.

-1-

7. Defendant Convergent Outsourcing, Inc. is engaged in the sole or principal business of a collection agency, collecting consumer debts and using the mails and telephone system for that purpose.

8. Upon information and belief, almost all of Defendant Convergent Outsourcing, Inc.'s resources are devoted to debt collection.

9. Upon information and belief, almost all of Defendant Convergent Outsourcing, Inc.'s revenue is derived from debt collection.

10. Upon information and belief, almost all of Defendant Convergent Outsourcing, Inc.'s expenses are related to debt collection.

11. Upon information and belief, Defendant Convergent Outsourcing, Inc. has over 600 employees engaged in debt collection.

12. Defendant Convergent Outsourcing, Inc. is a debt collector as defined by the FDCPA, 15 U.S.C. §1692a(6), as a person who uses one or more instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts.

13. Defendant Convergent Outsourcing, Inc. is a collection agency as defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA").

14. Defendant Convergent Outsourcing, Inc. holds a license under the ICAA.

## FACTUAL ALLEGATIONS

15. This action arises out of Defendant's attempts to collect a telecom debt incurred for personal, family or household purposes.

16. On or about December 13, 2021, Defendant Convergent Outsourcing, Inc. caused a letter vendor to send Plaintiff, at his attorney's address, the form letter in Exhibit A.

17. The letter bears markings that are characteristic of one generated by a letter vendor. In addition, the return address on the letter in Oaks, PA is that of a letter vendor.

18. In order to have the letter vendor send Plaintiff the letter in Exhibit A, Defendant

had to furnish the letter vendor with Plaintiff's name, the status of Plaintiff as a debtor, details of Plaintiff's alleged debt, and other personal information.

19. The letter vendor then populated some or all of this information into a prewritten template, printed, and mailed the letter.

20. Plaintiff never consented to having Plaintiff's personal and confidential information, concerning the debt or otherwise, shared with anyone else.

21. Due to Defendant's communication to this letter vendor, information about Plaintiff is within the possession of an unauthorized third-party, which has intruded into Plaintiff's private affairs. *Mastel v. Miniclip S.A*, 2:21cv00124, 2021 U.S. Dist. LEXIS 132401, 2021 WL 2983198 (E.D. Cal. July 14, 2021).

22. If a debt collector "conveys information regarding the debt to a third party -- informs the third party that the debt exists or provides information about the details of the debt -- then the debtor may well be harmed by the spread of this information." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015).

> As the world has gone digital, consumers' records, both financial and otherwise, are increasingly vulnerable to exposure. Transactions that were once fleeting, recorded only on paper and filed in some cabinet, or perhaps reduced to microfiche, are now but mouse-clicks away from duplication and dissemination.
>
> Unregulated databases, escalating numbers of mergers, and the proliferation of information brokers—private investigators who specialize in obtaining computerized records—all threaten privacy. As was noted in Congress, "databases of personal identifiable information are increasingly prime targets of hackers, identity thieves, rogue employees, and other criminals, including organized and sophisticated criminal operations."
>
> The internet raises particular privacy concerns, as information sent over the World Wide Web may pass through dozens of different computer systems, each of which can snatch and hold the information in its coffers. In addition, website owners can track consumers' online behavior and gather information about their preferences, often without their knowledge. Web bugs, or tiny graphics that are put into web pages and e-mails, can monitor who views the information. Clickstream data can tell website owners which pages of the site were viewed and for how long. "Cookies" dropped onto a computer may not identify the user by name but do identify the particular computer, which allows an interested party to assemble a great deal of information about that computer's user.

> Financial information is especially sensitive, able to reveal not just a consumer's standard of living and debt load, but also personal preferences and lifestyle details ranging from books bought to prescriptions purchased. In *California Bankers Ass'n v. Shultz*, Justice Powell pointed out that "[f]inancial transactions can reveal much about a person's activities, associations, and beliefs." Justice Douglas elaborated further:
>
>> A checking account . . . [m]ay well record a citizen's activities, opinion, and beliefs as fully as transcripts of his telephone conversations . . . In a sense a person is defined by the checks he writes. By examining them the agents get to know his doctors, lawyers, creditors, political allies, social connections, religious affiliation, educational interests, the papers and magazines he reads, and so on ad infinitum.
>
> The same can be said of credit card charges, debit purchases, and online transactions. Forty years later, the details of these revealing consumer activities are easily collected, compiled, analyzed, and accessed, and thus have created a lucrative market for their trade. One industry leader among data aggregation companies, Acxiom, advertises that it has data on 2.5 billion consumers. Acxiom claims that one of its products covering American consumers has data on 250 million consumers, offering data not just on individual demographics, but also household characteristics, financial information, life events, major purchases, and behavior, all of which allows for targeted marketing. Experian reports that it manages data on more than 300 million consumers and 126 million households, while Equifax claims a database of over 115 million U.S. households distributed over 150 different segment groups, which can be used to predict behavior. In 2017, Equifax suffered a data breach that involved the personal data on nearly half the United States population being stolen, a breach that a Congressional committee found to have been "entirely preventable." In 2014, the Federal Trade Commission filed a complaint against another data broker that allegedly bought the payday loan applications of consumers and then sold the information to marketers with no legitimate need for it, leading some scammers among them to debit millions from the consumers' accounts.

National Consumer Law Center, Fair Credit Reporting (9th ed. 2017) § 18.1,

23. Defendant unlawfully communicates with the unauthorized third-party letter vendor solely for the purpose of streamlining its generation of profits without regard to the propriety and privacy of the information which it discloses to such third-party.

24. In its reckless pursuit of a business advantage, Defendant disregarded the known, negative effect that disclosing personal information to an unauthorized third-party has on consumers.

## COUNT I – FDCPA

25. Plaintiff incorporates paragraphs 1-24.

26. The FDCPA broadly prohibits unfair or unconscionable collection methods,

-4-

conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

27. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

28. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

29. The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

30. Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 et seq.

31. The FDCPA defines "communication" at 15 U.S.C. § 1692a(2) as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

32. The sending of an electronic file containing information about Plaintiff's purported debt to a letter vendor is therefore a communication.

33. Defendant's communication to the letter vendor was in connection with the collection of a debt since it involved disclosure of the debt to a third-party with the objective being communication with and motivation of the consumer to pay the alleged debt.

34. In limiting disclosures to third parties, the FDCPA states, at 15 U.S.C. §1692c(b): "Except as provided in section 1692b of this title, without the prior consent of the consumer given

-5-

directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

35. The letter vendor used by Defendant as part of its debt collection effort against Plaintiff does not fall within any permitted exception provided for in 15 U.S.C. §1692c(b).

36. Defendant violated 15 U.S.C. §1692c(b) when it disclosed information about Plaintiff's purported debt to the employees of an unauthorized third-party letter vendor in connection with the collection of the debt. *Hunstein v. Preferred Collection & Mgmt. Servs.*, 994 F.3d 1341 (11th Cir. 2021), upon rehearing, No. 19-14434, 2021 U.S. App. LEXIS 32325 (11th Cir., Oct. 28, 2021), vacated upon grant of rehearing en banc, 2021 U.S. App. LEXIS 34202 (11th Cir. Nov. 17, 2021).

37. Defendant violated 15 U.S.C. §1692f by using unfair means in connection with the collection of a debt – disclosing personal information about Plaintiff to third parties not expressly authorized under the FDCPA.

## CLASS ALLEGATIONS

38. Plaintiff brings this claim on behalf of a class.

39. The class consists of (a) all individuals in Cook County (b) with respect to whom Defendant had a letter prepared and sent by a letter vendor (c) on behalf of the same creditor as Exhibit A (d) which letter was sent at any time during a period beginning one year prior to the filing of this action and ending 30 days after the filing of this action.

40. Plaintiff may alter the class definition to conform to developments in the case and discovery.

41. On information and belief, based on the size of Defendant's business operations and

the use of form letters, there are more than 40 members of the class, and the class is so numerous that joinder of all members is not practicable.

42. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendant's practice as described above violates the FDCPA.

43. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

44. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights;

   c. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

   i. Statutory damages;

   ii. Attorney's fees, litigation expenses and costs of suit;

   iii. Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT

45. Plaintiff incorporates paragraphs 1-24.

46. The ICAA reflects a determination that "The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of

-7-

public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes. . . . It is further declared to be the public policy of this State to protect consumers against debt collection abuse." 225 ILCS 425/1a.

47. 225 ILCS 425/9(a)(21) prohibits a collection agency or debt buyer "Disclosing or threatening to disclose information relating to a debtor's debt to any other person except where such other person has a legitimate business need for the information or except where such disclosure is permitted by law."

48. The instances in which disclosure is permitted by law are set forth in 225 ILCS 425/9.2(b), which provides that "Except as provided in Section 9.1 of this Act [225 ILCS 425/9.1] [relating to location information], without the prior consent of the debtor given directly to the collection agency, the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a collection agency may not communicate, in connection with the collection of any debt, with any person other than the debtor, the debtor's attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the collection agency."

49. A mail vendor does not have "a legitimate business need for the information" and disclosure to a mail vendor is prohibited by 225 ILCS 425/9.2(b).

50. There is a private right of action for violation of 225 ILCS 425/9, *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

51. As a result of the violation, Plaintiff's privacy was invaded.

## CLASS ALLEGATIONS

52. Plaintiff brings this claim on behalf of a class.

53. The class consists of (a) all individuals in Cook County (b) with respect to whom

-8-

Defendant had a letter prepared and sent by a letter vendor (c) seeking to collect a debt owed to the same creditor as Exhibit A (d) which letter was sent at any time during a period beginning 1 year prior to the filing of this action and ending 30 days after the filing of this action.

54. Plaintiff may alter the class definition to conform to developments in the case and discovery.

55. On information and belief, based on the size of Defendant's business operations and the use of form letters, there are more than 40 members of the class, and the class is so numerous that joinder of all members is not practicable.

56. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether Defendant's practice as described above violates the ICAA.

57. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

58. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendant Convergent Outsourcing, Inc. for:

    i. Compensatory damages;

    ii. Punitive damages;

    iii. Costs;

    iv. Such other or further relief as the Court deems proper.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cassandra P. Miller
Stephen J. Pigozzi
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Atty. No. 41106 (Cook)

-10-

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

/s/ *Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
   & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

-11-

-2-

## CERTIFICATE OF SERVICE

    I, Daniel A. Edelman, certify that I had a copy of this document placed for service with the complaint.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cassandra P. Miller
Stephen J. Pigozzi
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106